DEBRA A. RILEY (BAR NO. 151925)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone:  (619) 233-1155
Fax:  (619) 233-1158
E-Mail:  driley@allenmatkins.com

Attorneys for Debtor
COMMUNITY FACILITIES DISTRICT NO. 1990-1
(WILDWOOD ESTATES), NEVADA COUNTY,
CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>COMMUNITY FACILITIES DISTRICT NO. 1990-1 (WILDWOOD ESTATES), COUNTY OF NEVADA, CALIFORNIA,<br><br>       Debtor. | Case No. 2015-23888<br><br>Chapter 9<br><br>DCN:  AM-1<br><br>**CFD 1900-1'S MEMORANDUM OF FACT AND LAW IN SUPPORT OF ITS STATEMENT OF QUALIFICATIONS UNDER SECTION 109(c) OF THE UNITED STATES BANKRUPTCY CODE**<br><br>Date:    TBD<br>Time:    TBD<br>Dept.:   TBD<br>Judge:  TBD |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

On May 13, 2015, Community Facilities District No. 1990-1 (Wildwood Estates), Nevada County, California ("CFD 1990-1") filed its petition under chapter 9 of the United States Bankruptcy Code.  In connection therewith, CFD 1990-1 filed its Statement of Qualifications Under Section 109(c) ("Statement of Qualifications"), in which it certified that it satisfied each of the five eligibility criteria set forth in Section 109(c) of the Bankruptcy Code.  CFD 1990-1 hereby submits this Memorandum of Fact and Law in support of its Statement of Qualifications.

## I.     INTRODUCTION

CFD 1990-1 was formed in 1990 as an independent legal entity under California Mello-Roos laws to finance certain infrastructure improvements for the Wildwood Estates development, a 282-acre mixed residential development project adjacent to the Lake Wildwood community ("Project").  CFD 1990-1 issued Special Tax Bonds, Series E-1990 (Base CUSIP No. 64126M) ("Bonds") in the original principal amount of $9,070,000 secured by a special tax lien on the property within the boundaries of CFD 1990-1.  The Bonds were to be repaid through the special taxes levied against the property.

CFD 1990-1's financial woes arose soon after its formation, when the then-property owner abandoned the Project, failed to complete construction of the infrastructure for Phases 2 and 3, filed bankruptcy and, failed to pay the special taxes that were designed to cover the annual debt service on the Bonds.  Since then, the County of Nevada ("County"), acting on behalf of CFD 1990-1, has returned unused Bond proceeds to the holders of the Bonds ("Bondholders"), conducted several foreclosure sales and implemented several workout plans to restructure and/or refinance the defaulted Bonds.  While these efforts did return some principal and interest to the Bondholders and Phase 1 of the Project was completed and sold, there have never been sufficient resources to fully repay the Bondholders or pay the ongoing administrative expenses associated with operating CFD 1990-1.

CFD 1990-1 is hopelessly insolvent.  CFD 1990-1 has been unable to pay any interest or principal on the Bonds since 2002 and, although not obligated to do so, the County has funded much of CFD 1990-1's administrative expenses over the years.  In June 2013, in furtherance of ongoing efforts to resolve CFD 1990-1's inability to pay its debts, the County Board of

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

Supervisors ("Board of Supervisors"), acting in their capacity as the legislative body for CFD 1990-1, authorized the commencement of a confidential neutral evaluation process for CFD 1990-1 pursuant to California Government Code section 53760, *et seq.* Through the confidential neutral evaluation process an agreement in principle was reached by and among CFD 1990-1, the County, Wildwood Resolution LLC ("Wildwood"), the current owner of the property, and Bondholders holding in excess of a majority in amount of the Bonds.[1]

On April 28, 2015, the Board of Supervisors approved a settlement agreement by and among CFD 1990-1, the County, Wildwood, and Nevco Land Acquisition, LLC ("Nevco"), the proposed purchaser of the property ("Settlement"). The Settlement allows CFD 1990-1 to move forward with the agreement reached through the confidential neutral evaluation process. To implement the Settlement, the Board of Supervisors also authorized CFD 1990-1 to commence a voluntary bankruptcy under chapter 9 of the Bankruptcy Code, to allow CFD 1990-1 to propose a Plan of Adjustment, which if confirmed by this Court, would provide a distribution to Bondholders in excess of 28 percent of the par amount of their respective Bonds. The chapter 9 case only affects CFD 1990-1, not the County, any of the County's budgets, or its General Fund.

Bankruptcy is the last resort for CFD 1990-1. No other viable alternative exists.

## II.    FACTUAL BACKGROUND

### A.    Formation of the CFD and Issuance of Bonds

On March 20, 1990, pursuant to the Mello-Roos Community Facilities Act of 1982, as amended ("Mello Roos Act"), the County's Board of Supervisors, adopted Resolution Nos. 90-142 and 90-143 forming CFD 1990-1 as a legally constituted governmental entity, authorizing the public facilities for the Project ("Facilities") that could be financed with bonds, approving the levy of special taxes ("Special Taxes") pursuant to a Rate and Method of Apportionment of Special Tax ("RMA") to, among other things, service the debt on any bonds issued, and authorizing the issuance of Bonds to finance the Facilities. Declaration of Martin Polt in Support of CFD 1990-1's

---

[1]    One of these Bondholders is an affiliate company of Wildwood that owns 59% of the Bonds.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                    -2-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

Statement of Qualifications under Section 109(c) of the United States Bankruptcy Code ("Polt Decl."), ¶¶ 5-6, Exhibits A and B to Exhibits A-G to the Polt Decl. ("Polt Exhibits")

On December 20, 1990, CFD 1990-1 issued $9,070,000 aggregate principal amount of the Bonds to finance the construction of the Facilities for all three phases of the Project. *Id*. at ¶ 7, Exhibit C to the Polt Exhibits. The Bonds were issued under an "Indenture of the Board of Supervisors of the County of Nevada Providing for the Form, Execution and Issuance of Bond," dated December 20, 1990, between the County and Bank of America National Trust and Savings as fiscal agent, predecessor in interest to U.S. Bank Trust National Association ("Fiscal Agent"), as such was amended subsequent to the initial execution ("Indenture"). *Id*. at ¶ 8, Exhibit D to the Exhibits to the Polt Decl. The Bonds are secured by certain accounts held by the Fiscal Agent as described in the Indenture and a first-priority security interest in net special taxes levied against the real property within CFD 1990-1. *Id*. at ¶ 9, Exhibit E to the Polt Exhibits.

Neither the assets, the full faith and credit, nor any general taxing power of the County, the State of California, nor any other political subdivision thereof is pledged to nor liable on the Bonds. *Id*. at ¶ 10.

### B.     Initial Default under the Bonds

On December 10, 1992, after completion of the Facilities and other improvements for Phase 1, Wildwood Estates, Inc.,[2] the original developer ("Original Developer"), failed to pay Special Taxes levied against the real property then located within the boundaries of CFD 1990-1. After depletion of the reserve account established under the Indenture, the Bonds went into payment default on March 1, 1994. Polt Decl., ¶ 11.

On December 14, 1993, the Board of Supervisors adopted Resolution No. 93-604 declaring the Project abandoned and terminating the Mello-Roos funding for the Facilities due to, among other things, the failure of the Original Developer to construct the Facilities for Phases 2 and 3 of the Project in accordance with the original plans and to pay the Special Taxes which were required

---

[2]   Original Developer is not related in any way to the current owner of the property.

in order to provide a source of funds to meet the principal and interest obligations to the holders of the Bonds. *Id*. at ¶ 12, Exhibit F to the Exhibits to the Polt Decl.

At the time the Mello-Roos funding was terminated, unexpended bond proceeds in the approximate amount of $4,590,000 remained in the Acquisition Account established pursuant to the Indenture and Bonds in the aggregate principal amount of $8,965,000[3] were outstanding. On March 1, 1994, the Board of Supervisors adopted Resolution Nos. 94-82 and 94-83, pursuant to which the County, on behalf of CFD 1990-1, made a tender offer to Bondholders through which it acquired and cancelled $4,050,000 principal amount of Bonds using the unexpended bond proceeds. *Id.* at ¶ 13, Exhibit G to the Polt Exhibits. An additional $95,000 of principal amount of Bonds were redeemed and cancelled in 1995 in connection with the Initial Workout (as defined below). *Id*. at ¶ 14.

As of March 31, 2015, Bonds in an aggregate principal amount of $4,820,000 remain outstanding, with accrued and unpaid interest of approximately $5,797,249. *Id*. at ¶ 15. CFD 1990-1 has been informed that affiliate companies of Wildwood, the current owner of the property, own Bonds in an aggregate principal amount of $2,845,000, representing 59% of the outstanding amount of the Bonds. *Id*.

**C.    Foreclosures/Workout/Restructuring Efforts**

CFD 1990-1 has been plagued with financial problems for over 22 years. As enumerated below, during this period of time, the County, on behalf of CFD 1990-1, has utilized every non-bankruptcy tool available to find a solution to maximize returns to the Bondholders. Polt Decl., ¶ 28.

On May 28, 1993, the County, on behalf of CFD 1990-1, instituted judicial foreclosure proceedings against special tax delinquent properties within the boundaries of CFD 1990-1 in the Municipal and Superior Court of the State of California, County of Nevada entitled *County of Nevada v. Wildwood Estates*, *et al.*, Case No. 49121. *Id*. at ¶ 29. Those proceedings were lengthy, in part due to the bankruptcy of the Original Developer.

[3] Bonds in the aggregate amount of $105,000 that matured on September 1, 1993, were paid from proceeds in the Reserve Account.

On December 21, 1993, while the foreclosure proceeding was pending, the Original Developer's lender, First Commercial Bank ("First Bank"), acquired title to the property within CFD 1990-1 by foreclosing on a loan it had made to the Original Developer. Following its acquisition of the property, First Bank also failed to pay Special Taxes when due. *Id*. at ¶ 30.

In September 1994, the County, on behalf of CFD 1990-1, obtained a Judgment for Foreclosure against delinquent property subject to the lien for Special Taxes within the boundaries of CFD 1990-1 (*i.e.,* the property then owned by First Bank). *Id*. at ¶ 31. Pursuant to the Judgment for Foreclosure, the County's Sheriff's Department conducted a foreclosure sale on all of the property in CFD 1990-1 on June 1, 1995. No bids were received at such sale. *Id*.

In October 1995, as part of initial workout efforts, First Bank and CFD 1990-1 entered into the Wildwood Forbearance Agreement dated October 17, 1995, between the County and First Bank ("Wildwood Forbearance Agreement") under which, among other things, (i) CFD 1990-1 agreed to forbear in further executing on its Judgment for Foreclosure, and (ii) First Bank agreed to sell all 103 finished lots within Phase 1 of the Project according to a certain schedule and to remit all of the sales proceeds to CFD 1990-1 and the County to be applied to the costs of the transaction, and to satisfy delinquent property taxes, and other assessments (collectively, "Property Taxes"), Special Taxes, and homeowner's association fees ("Initial Workout"). *Id*. at ¶ 32.

As part of the Initial Workout, 35 finished lots within Phase 1 were sold. From the sale proceeds of each lot, the release price under the RMA, as amended ("Release Price"), was paid, and in exchange for the Release Price, CFD 1990-1 released the Special Tax lien on those lots. The proceeds from the prepayment of Special Taxes on those 35 lots were sufficient to pay principal and interest on the Bonds through and including September 1, 1997. No other lot sales occurred after this date resulting in a breach of the Wildwood Forbearance Agreement by First Bank. *Id*. at ¶ 33.

As a result of the continuing defaults under the Wildwood Forbearance Agreement, CFD 1990-1 modified the Judgment for Foreclosure to reflect the payments received pursuant to the Initial Workout and to add new delinquencies, penalties and court costs arising subsequent to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD      -5-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

the date of the Judgment for Foreclosure. Once completed, CFD 1990-1 conducted another foreclosure sale on February 19, 1998. Once again no bids were received. *Id*. at ¶ 34.

Later in 1998, the County sought the guidance of Stone & Youngberg LLC to resolve the Bond payment delinquencies and the failed development Project. *Id*. at ¶ 35. As part of those efforts, on December 15, 1999, Wildwood, then an affiliate of Stone & Youngberg LLC, acquired all the property within CFD 1990-1 which was still subject to the Special Taxes, consisting of 68 finished lots in Phase 1 and all of the real property within Phases 2 and 3 of the Project, from First Bank and began to acquire Bonds. *Id*.

Thereafter, Wildwood, the County, and CFD 1990-1 worked together to develop a second workout plan under which the parties proposed to sell off the remaining finished lots in Phase 1 and then refinance the Bonds ("Second Workout"). In connection with this workout plan, Wildwood was tasked with selling the remaining 68 finished lots in Phase 1. The proceeds from the sale of these remaining lots were used to satisfy an amended Release Price, to pay the costs associated with the transaction, pay delinquent Property Taxes, and the balance went to Wildwood. *Id*. at ¶ 36. The 68 lots within Phase 1 were sold during the period February 2001 through May 2003. *Id*.

The County and CFD 1990-1 contributed to the efforts in the Second Workout by waiving accrued penalties and interest on the delinquent Property Taxes (Resolution No. 00-545) and the delinquent Special Taxes (Resolution No. 00-546) on those 68 lots, respectively. *Id*. at ¶ 37. As provided under the RMA, as amended, upon payment of the Release Price, CFD 1990-1 released the Special Tax lien on each sold lot. The Release Price, after payment of certain costs, was deposited into the Reserve Account and then used by the Fiscal Agent to pay approximately $1.5 million of delinquent interest to holders of the Bonds, representing approximately 75% of the defaulted interest owed to them from March 1, 1997 through March 1, 2002. *Id*.

While the lots in Phase 1 were being sold, the County worked with Wildwood to formulate a refinancing plan to redeem the Bonds secured by a Special Tax lien on Phases 2 and 3 of the Project ("Property"). In or about May 2005, the parties formulated a financing plan which contemplated that the Bonds would be redeemed from the proceeds of two series of refunding

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                              -6-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

bonds issued by a new community facilities district and funds the County was holding that related to the Project but were not security for the Bonds ("Refunding Transaction"). *Id*. at ¶ 38.

Initially, the Refunding Transaction was contingent, on the sale of the Property to a third party builder. In or about May 2006, such third party builder/buyer exercised its right to terminate the land sale contract with Wildwood. *Id*. at ¶ 39. In 2007, the parties moved forward with the Refunding Transaction with certain amendments ("Amended Refunding Transaction"). On September 25, 2007, the Board of Supervisors authorized the issuance of the refunding bonds, subject to certain conditions. The parties anticipated that the conditions would be satisfied and the refunding bonds issued in December 2007. The proceeds from the sale of the refunding bonds would then be used to satisfy the Bonds in full. *Id*.

Despite these efforts, the refunding bonds were never issued and the Amended Refunding Transaction was declared infeasible due to many factors, including the deterioration in the residential real estate market at that time, along with disruptions and readjustments in the credit markets. *Id*. at ¶ 40. The Amended Refunding Transaction was postponed indefinitely. *Id*.

Since 2007, the County, on behalf of CFD 1990-1, has continued to monitor the value of the Property by obtaining periodic appraisals. Declaration of Alison Barratt-Green in Support of CFD 1990-1's Statement of Qualifications under Section 109(c) of the United States Bankruptcy Code ("Barratt-Green Decl."), ¶ 7. Because the amount of outstanding delinquent Special Taxes and Property Taxes, with penalties and interest greatly exceeded the value of the Property, the appraisals were prepared with the assumption that the Property is not encumbered by a Special Tax lien and that there are no delinquent Special Taxes or Property Taxes. *Id*.

The periodic re-appraisals were part of a due diligence process for regularly monitoring the value of the Property to determine whether or not its value had increased to a point where restructuring/refinancing may have been a possibility. *Id*. at ¶ 8. However, at no time was the appraised value of the Property (with the assumption there was no lien of Special Taxes, no delinquent Special Taxes, penalties and interest, and no delinquent Property Taxes, penalties and interest) in excess of the sum of (i) delinquent Property Taxes with interest and penalties, and (ii) principal and interest owed under the Bonds. *Id*.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                          -7-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

CFD 1990-1 was informed that in 2012, an affiliate of Saybrook Municipal Opportunity Fund IV, LP acquired the equity interests in Wildwood when it acquired the real estate portfolio of Stone & Youngberg LLC, when Stone & Youngberg itself was sold. *Id*. at ¶ 9. Shortly thereafter, Wildwood under new ownership, engaged in discussions with the County regarding the delinquencies under the Bonds and the failed development Project. *Id*. at ¶ 10.

### D.     Outstanding Liabilities of CFD 1990-1

The Bonds were issued in December 1990. As noted above, certain principal payments and some interest have been paid to Bondholders. However, no interest or principal payments have been paid on the Bonds for thirteen years - since March 1, 2002. Polt Decl., ¶ 21. As of March 31, 2015, $10,617,249 is outstanding on the Bonds, of which $4,820,000 represents principal and approximately $5,797,249 represents accrued and unpaid interest. *Id*. Interest continues to accrue on the principal balance of the Bonds at a blended rate of approximately 8.39% per year or $404,240 per year. Declaration of Barry Ihrke in Support of CFD 1990-1's Statement of Qualifications under Section 109(c) of the United States Bankruptcy Code ("Ihrke Decl."), ¶ 4.

In addition to the obligations owed under the Bonds, CFD 1990-1 incurs administrative expenses relating to the Bonds and the district itself. Polt Decl., ¶ 17. Each year, pursuant to the Indenture and the RMA, the County, on behalf of CFD 1990-1, levies Special Taxes in accordance with a formula in the RMA, in an amount that at least satisfies debt service on the Bonds and estimated Administrative Expenses for the upcoming year. *Id*. at ¶ 18.

Since Special Taxes have not been paid by the landowner when levied, CFD 1990-1 has only had the funds in the Reserve Account established under the Indenture and the funds it received in connection with the Initial Workout and the Second Workout to pay administrative expenses. *Id*. at ¶ 19. Since Fiscal Tax Year 2002-03, the County has periodically advanced funds from its general fund to CFD 1990-1 to pay CFD 1990-1's administrative expenses. *Id*. at ¶ 22. As of March 31, 2015, the County had advanced $100,442.50 to CFD 1990-1. *Id*. at ¶ 23. In addition to these advances, the County has directly paid from its general fund $20,344.58 of CFD 1990-1 expenses. *Id*. As of March 31, 2015, CFD 1990-1 owes the County $120,787. *Id*.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                -8-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

**E.    Property Value and Outstanding Special Taxes and Property Taxes**

As noted above, payments under the Bonds are secured by a Special Tax lien on the Property and the funds in certain accounts maintained by the Fiscal Agent under the Indenture. As of April 30, 2015, the cumulative balance of the accounts maintained by the Fiscal Agent as security for the Bonds was approximately $58,407, and the balance in the account maintained by the Fiscal Agent as security for administrative expenses of CFD 1990-1 was approximately $789. Ihrke Decl., ¶ 6.

In connection with both the confidential neutral evaluation process and settlement negotiations discussed below, the County obtained appraisals for Property with the assumption that there were no delinquent Special Taxes and no delinquent Property Taxes, and no lien securing Special Taxes to pay future debt service on the Bonds. Based on the foregoing assumption, the Property was valued at $1,490,000 as of January 30, 2014, and $1,760,000 as of February 4, 2015. Barratt-Green Decl., ¶ 25, Exhibits B and C to the Exhibits to the Barratt-Green Decl. ("Barratt-Green Exhibits").

Delinquent Special Taxes and Property Taxes, each with penalties and interest, far exceeded the value of the Property at the time of the valuations. As of the date of the first appraisal, the delinquent Special Taxes, with accrued penalties and interest, were approximately $18.9 million (Polt Decl., ¶ 26), and delinquent Property Taxes, with accrued penalties and interest, were approximately $1,250,000. Polt Decl., ¶ 27. As of the date of the second appraisal, February 4, 2015, the delinquent Special Taxes, with accrued penalties and interest, were approximately $20.1 million (Polt Decl., ¶ 26), and delinquent Property Taxes, with accrued penalties and interest, were approximately $1,560,000 (Polt Decl., ¶ 27), an increase in delinquencies of $1.5 million over approximately a one year period.

**F.    CFD 1990-1 Participated in the AB 506 Mediation Process in Good Faith**

In 2011 the California Legislature enacted Assembly Bill 506 ("AB 506"), codified at Government Code section 53760 *et seq.*, requiring municipalities, before filing bankruptcy, either to participate in a "neutral evaluation process" for 60 to 90 days or to declare a "fiscal emergency" if the health and safety of the city's residents would be compromised by waiting 60 or 90 days.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                    -9-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

See Cal. Gov't Code § 53760 (2012). On June 25, 2013,[4] in furtherance of continued efforts to resolve CFD 1990-1's inability to pay its debts when they become due, the Board of Supervisors, as the legislative body for CFD 1990-1, authorized the commencement of a neutral evaluation process for CFD 1990-1 pursuant to California Government Code sections 53760, *et seq.* Barratt-Green Decl., ¶ 11.

The Fiscal Agent acts as the registrar and transfer agent for the Bonds.[5] Ihrke Decl., ¶ 1. On October 8, 2013, the Fiscal Agent mailed the following documents ("AB 506 Materials"): (i) a "Request for Neutral Evaluation to the Owners of Community Facilities District No. 1990-1 (Wildwood Estates), County of Nevada, California, Special Tax Bonds, Series E-1990 and Other Interested Parties", (ii) an excerpt from California Government Code section 53760, *et seq.*, and (iii) a Response to Request for Neutral Evaluation ("AB 506 Response") to all of the Registered Owners, and to the DTC Participants of record on September 30, 2013. Ihrke Decl., ¶ 10. In addition, outside counsel to CFD 1990-1 ("Outside Counsel") mailed the AB 506 Materials to a broker in California ("California Broker") who had identified itself has holding in excess of $2 million of the Bonds for a client. Barratt-Green Decl., ¶ 14.

Six beneficial owners, owning Bonds in the aggregate amount of $3,035,000, or 63% of all the outstanding Bonds, returned AB 506 Responses to CFD 1990-1's Outside Counsel. Only five of the six expressed a willingness to participate in the neutral evaluation. Ultimately, only three of

---

[4] On June 26, 2013, CFD 1990-1 caused a notice on MSRB's (the Municipal Securities Rulemaking Board) EMMA (Electronic Municipal Market Access) website to be posted that stated that the Board of Supervisors authorized the commencement of a neutral evaluation process for CFD 1990-1. Barratt-Green Decl., ¶ 12.

[5] According to the registry maintained by the Fiscal Agent, a portion of the Bonds are registered in the name of beneficial owners ("Registered Owners") and the remainder of the Bonds are registered in the name of CEDE & CO. CEDE & CO identifies the Bonds being held in "book entry" or electronic form at The Depository Trust Company ("DTC"), New York, New York. DTC holds the Bonds for its participants, often broker-dealers ("DTC Participants"), which in turn hold for the actual beneficial owners. Although the identity of the broker-dealers can be determined on a date certain if a request is made by the issuer to DTC, the identities of the actual beneficial owners for the Bonds held by the broker-dealers remain unknown. Ihrke Decl., ¶ 7. Federal security rules require, however, that notices delivered to the DTC Participants be delivered by those broker-dealers to their customers, the beneficial owners of the Bonds.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                          -10-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

the five actually participated in the confidential neutral evaluation sessions described below. *Id*. at ¶ 15.

Outside Counsel, on behalf of CFD 1990-1, sought RFPs from several qualified mediators. Proposals were received from only three mediators, including one from Michael Castelli. As part of Mr. Castelli's proposal, he disclosed that from 1998 – 2008 he acted as Special Counsel to the County for municipal finance matters, including those matters relating to CFD 1990-1. During this time Mr. Castelli was an employee of County and counsel to CFD 1990-1. *Id*. at ¶ 16. Prior to the conference call to discuss and choose the mediator, Outside Counsel, on behalf of CFD 1990-1, forwarded Mr. Castelli's proposal, along with the proposals of two other proposed mediators to those Bondholders that indicated they wanted to participate in the neutral evaluation process. *Id*. at ¶ 17. On November 19, 2013, after a discussion of the qualifications and relationships of all of the proposed mediators, the County, CFD 1990-1, and 22 Bondholders that participated in the call unanimously selected Michael Castelli, an accomplished bond lawyer and mediator, as a "neutral evaluator," or mediator. *Id*. at ¶ 18.

In accordance with California Government Code section 53760.3, Mr. Castelli, the appointed neutral evaluator, County representatives, for the County and on behalf of CFD 1990-1, Wildwood, the landowner, and up to three holders of the Bonds, who held in the aggregate $2,950,000 of the Bonds or 61.2 percent of the outstanding par amount of the Bonds, participated in confidential neutral evaluation sessions spanning the period December 2013 through March 2014, concerning the CFD 1990-1's inability to pay debt service due under the Bonds. *Id*. at ¶ 19.

Although an unanimous agreement concerning a resolution of CFD 1990-1's inability to pay its debts when they become due was not reached, the confidential neutral evaluation process did produce an agreement in principle by and among CFD 1990-1, the County, Wildwood, and Bondholders holding in excess of a majority in amount of the outstanding Bonds. *Id*. at ¶ 21.

### G. Continued Discussions

After the confidential neutral evaluation concluded in or about March 2014, the County, on behalf of CFD 1990-1, continued to assess strategies to increase recoveries to the Bondholders.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                           -11-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

*Id*. at ¶ 22.  Negotiations over the terms of the Settlement ensued.  *Id*. at ¶ 23.  On April 28, 2015, the Board of Supervisors approved a settlement agreement by and among CFD 1990-1, the County, Wildwood, and Nevco Acquisition LLC ("Nevco"), the proposed purchaser of the Property ("Settlement").  Under the Settlement, Nevco will purchase the Property at its appraised value of $1,760,000.  All proceeds generated by the sale, together with CFD 1990-1's funds and other restricted funds of the Project but not otherwise considered security for the Bonds, will be used to make payments to Bondholders, pay principal on delinquent Property Taxes, pay the costs and attorneys' fees associated with implementing the settlement agreement.  The Settlement further provides that the County has agreed to waive claims against CFD 1990-1 for certain administrative costs and the delinquent penalties and interest on the unpaid Property Taxes in an effort to finally resolve this difficult situation and ensure that the Bondholders receive a meaningful distribution.  *Id*. at ¶ 23.  If fully implemented, the Settlement is expected to return Bondholders at least 28 cents per dollar of principal amount of the Bonds in complete satisfaction of all amounts due, and all amounts to become due, under the Bonds.  *Id*. at ¶ 24, Exhibit A to the Barratt-Green Exhibits.

### H.    CFD 1990-1 Files Its Chapter 9 Petition

In light of CFD 1990-1's continued inability to pay its debts when they become due and the history of failed attempts to restructure and/or refinance its debts, on April 28, 2015, the Board of Supervisors acting as the legislative body for CFD 1990-1 approved the Settlement and authorized the commencement of a bankruptcy case for CFD 1990-1 ("Bankruptcy Case") pursuant to Chapter 9 of Title 11 of the United States Code, 11 U.S.C. section 101, *et seq.* ("Bankruptcy Code") to implement the Settlement.  *Id*. at ¶ 26.  The County, for itself and on behalf of CFD 1990-1, believes that the compromises by and between the parties of the Settlement will maximize a sum of funds that can be used by CFD 1990-1 to redeem and retire the Bonds as part of CFD 1990-1's Plan of Adjustment.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                     -12-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

## III. CFD 1990-1 IS AN ELIGIBLE DEBTOR UNDER CHAPTER 9 OF THE BANKRUPTCY CODE

To be eligible for relief under chapter 9, a petitioner must meet certain criteria. The Court construes these criteria "broadly to provide access to relief in furtherance of the Code's underlying policies." *Int'l Ass 'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo)*, 408 B.R. 280, 288 (B.A.P. 9th Cir. 2009) (quoting *In re Valley Health Sys.*, 38 B.R. 156, 163 (Bankr. C.D. Cal. 2008)). Chapter 9 affords a municipality temporary protection from debt collection efforts so that it may establish a plan of adjustment with its creditors. *Vallejo*, 408 B.R. at 163.

As provided in 11 U.S.C. section 109(c), an entity is eligible to be a debtor under chapter 9 if it:

(1) is a municipality;

(2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;

(3) is insolvent;

(4) desires to effect a plan to adjust such debts; and

(5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;

(C) is unable to negotiate with creditors because such negotiation is impracticable; or

(D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of title 11.

11 U.S.C. § 109(c). CFD 1990-1 bears the burden of satisfying each criterion; if it cannot do so, the Court should dismiss the bankruptcy petition. *Vallejo*, 408 B.R. at 289. As detailed below, CFD 1990-1 has carried its burden and is eligible to be a debtor under chapter 9 of the Bankruptcy Code.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD      -13-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

### A.      <u>CFD 1990-1 is a Municipality</u>

The petitioner under chapter 9 must be a municipality.  *See* 11 U.S.C. § 109(c)(1).  Section 101(40) of the Bankruptcy Code defines a municipality as a "political subdivision or public agency or instrumentality of a State."  11 U.S.C. § 101(40).  CFD 1990-1 is a communities facilities district, "a legally constituted governmental entity" created by a special act of the California legislature.  *See* definition in Cal. Gov't Code § 53317(b).  Specifically, the Mello-Roos Act (Cal Gov't Code §§ 53311-53368.3) enables any county, city, special district, school district, or joint powers authority to establish a community facilities district to finance needed improvements and services.

On March 20, 1990, after a public hearing, the Board of Supervisors for the County adopted Resolution No. 90-142 forming CFD 1990-1 under the terms of the Mello-Roos Act, for the purpose of financing the Facilities for the Project.  Polt Decl. ¶¶ 5 and 6 and Exhibits A and B to the Polt Exhibits.  CFD 1990-1 is a separate legal entity that has the power and right, among others, to: (i) enter into contracts, (ii) incur and pay debts, (iii) sue and be sued, (iv) issue bonds, (v) condemn property, and (vi) levy taxes on property within the district.  Accordingly, CFD 1990-1 is a legally constituted governmental entity as defined in section 53317(b) of the Government Code and is a municipality within the meaning of Section 109(c)(1) of the Bankruptcy Code.

### B.      <u>CFD 1990-1 is Authorized by California Law to Bring its Petition</u>

A chapter 9 petitioner must be specifically authorized under state law to be a debtor under chapter 9 of the Bankruptcy Code.  *See* 11 U.S.C. § 109(c)(2).  Until 2012, California provided its municipalities "the broadest possible" access to bankruptcy court, permitting cities to "file a petition and exercise powers pursuant to applicable federal bankruptcy law" without first satisfying any separate state law requirements.  *See Int'l Bhd. of Elec. Workers, Local 2376 v. City of Vallejo (In re City of Vallejo)*, 432 B.R. 262, 268 (E.D. Cal. 2010) (quoting Law Revision Commission Comments to Government Code section 53760).  AB 506 amended this historically broad grant and now requires that municipalities, prior to filing, either participate in a "neutral evaluation process" or utilize the emergency off-ramp.  *See* Cal. Gov't Code § 53760 (2012).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                    -14-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

Prior to commencing this chapter 9 case, in compliance with Cal. Gov't Code § 53760, CFD 1990-1 participated in a neutral evaluation process. On June 25, 2013, the Board of Supervisors acting as its legislative body, authorized CFD 1990-1 to commence the AB 506 process because CFD 1990-1 "was . . . unable to meet its financial obligations as and when those obligations are due or become due and owing," Cal. Gov't Code § 53760.3(a). Barratt-Green Decl., ¶11.

Except for the monies owed to the County, the only other obligations of CFD 1990-1 are the Bonds. Polt Decl., ¶¶ 15, 16. On October 8, 2013, the Fiscal Agent mailed each of the Registered Owners and DTC Participants as of September 30, 2013, the AB 506 Materials. Ihrke Decl., ¶ 10. In addition, Outside Counsel mailed the AB 506 Material to the California Broker. Barratt-Green Decl., ¶ 14.

AB 506 Responses were returned to Outside Counsel. Six beneficial owners of the Bonds returned AB 506 Responses, owning Bonds in the aggregate amount of $3,035,000, or 63%, but only five of the six beneficial owners expressed a willingness to participate in the neutral evaluation. *Id*. at ¶ 15; Cal. Gov't Code § 53760.3(b). Ultimately, the County, Wildwood, as the landowner, and beneficial owners of the Bonds owning approximately 61.2 percent of the Bonds (collectively, "Participants") actually participated in the mediation sessions. *Id*. at ¶ 19.

On November 19, 2013, CFD 1990-1 and the Participants selected Michael Castelli, an accomplished bond lawyer and mediator, as the "neutral evaluator," or mediator. *Id*., at ¶ 18; Cal. Gov't Code § 53760.3(c)(l). Upon the engagement of Mr. Castelli, the neutral evaluation process commenced and continued for the 60 days mandated by statute. Thereafter, CFD 1990-1 and the Participants agreed to extend the AB 506 process twice, each for another 30 days in order to complete the mediation. *Id*. at ¶ 20; Cal. Gov't Code § 53760.3(r).

In accordance with California Government Code section 53760.3, Mr. Castelli, the appointed neutral evaluator, County representatives, for the County and on behalf of CFD 1990-1, Wildwood, the landowner, and up to three holders of the Bonds, who held in the aggregate $2,950,000 of the Bonds or 61.2 percent of the outstanding par amount of the Bonds, participated in confidential neutral evaluation sessions spanning the period December 2013 through

March 2014, concerning the CFD 1990-1's inability to pay debt service due under the Bonds. *Id*. at ¶ 19.

CFD 1990-1 can prove that it (and others) participated in the neutral evaluation process in "good faith". Cal. Gov't Code § 53760.3(o). CFD 1990-1 believes that the Participants maintained the confidentiality required by statute. Cal. Gov't Code § 53760.3(q). It also can prove that it provided sufficient information to Mr. Castelli and to the Participants. CFD 1990-1 will show that it and the Participants engaged in discussions aimed at reaching a consensual agreement over repayment of the Bonds and the amounts owed to the County. If the Court believes that CFD 1990-1 should be required to present further evidence to determine CFD 1990-1's eligibility for relief under chapter 9, CFD 1990-1 will submit specific evidence of these facts as permitted by Cal. Gov't. Code section 53760.3(q)(2).

Although an unanimous agreement concerning a resolution of CFD 1990-1's inability to pay its debts when they become due was not reached, the confidential neutral evaluation process did produce an agreement in principle by and among CFD 1990-1, the County, Wildwood, and Bondholders holding in excess of a majority in amount of the outstanding Bonds. *Id*. at ¶ 21; Cal. Gov't Code § 53760.3.

**C.    CFD 1990-1 is Insolvent Under Section 109(c)(3)**

A municipality is considered insolvent when it is "(i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due." *Vallejo*, 408 B.R. at 289; *see* 11 U.S.C. § 101(32)(C)(i) and (ii). Insolvency is determined based on the debtor's financial condition as of the date the petition is filed. *In re City of Bridgeport*, 129 B.R. 332, 337 (D. Conn. 1991). Insolvency is primarily evaluated under a cash flow analysis, as opposed to a balance sheet or budget deficit analysis. *Id.* at 337.

CFD 1990-1 is insolvent as of the date of its chapter 9 petition. As noted above, CFD 1990-1's primary obligations are the Bonds. Polt Decl., ¶ 16. Because Special Taxes have not been paid CFD 1990-1 has been unable to pay scheduled principal and interest payments on the Bonds since 2002. Polt Decl., ¶ 21; Ihrke Decl., ¶ 5. As of March 31, 2015, $10,617,249 is outstanding on the Bonds, of which $4,820,000 is principal and $5,797,249 represents accrued and

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                    -16-                    MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

unpaid interest. Polt Decl., ¶ 21. CFD 1990-1 has no means of bringing the Bonds current or the ability to make scheduled debt service on the Bonds in the coming years. *Id*. at ¶ 24. Although not obligated to do so, the County has been paying the administrative expenses of CFD 1990-1. *Id*. at ¶ 22. As of March 31, 2015, over $120,000 is owed to the County. *Id*. at ¶ 23. Simply, CFD 1990-1 is unable to pay its obligations as they become due. Pursuant to Section 101(32)(C), CFD 1990-1 is insolvent within the meaning of Section 109(c)(3) and, accordingly, is eligible to file a chapter 9 petition. See *Bridgeport*, 129 B.R. at 337.

### D.      CFD 1990-1 Desires to Effect a Plan to Adjust Its Debts

Section 109(c)(4) of the Bankruptcy Code requires that a municipality desire to effect a plan to adjust its debts. As noted above, through the AB 506 process, CFD 1990-1, the County, Wildwood, the landowner, and beneficial owners of Bonds holding 61.2 percent of the outstanding principal amount of the Bonds participated in the AB 506 process. Although not unanimous, beneficial owners of Bonds holding in excess of the majority of the Bonds and the County agreed on principle terms of a plan of adjustment of its debts. Barratt-Green Decl., ¶ 21. On April 28, 2015, the Board of Supervisors approved a Settlement by and between CFD 1990-1, the County, Wildwood, and Nevco which now allows CFD 1990-1 to move forward with a plan of adjustment of its debts ("Bankruptcy Plan") and authorized the commencement of this chapter 9 case. *Id*. at ¶¶ 23, 26. Once the order for relief is entered, CFD 1990-1 intends to file its Bankruptcy Plan, disclosure statement and motion to seek approval of the disclosure statement and solicitation procedures for its Bankruptcy Plan. CFD 1990-1 desires to move efficiently and effectively through the chapter 9 bankruptcy case to maximize distributions to Bondholders. Polt Decl., ¶ 42.

### E.      CFD 1990-1 Has Met the Negotiation Requirement Under Section 109(c)(5)

Section 109(c)(5) provides four alternative tests for proving that CFD 1990-1 attempted to negotiate with its creditors before filing its petition. CFD 1990-1 need satisfy only one of the four to be found eligible for chapter 9 relief. Here, CFD 1990-1 has met the condition set forth in section 109(c)(5)(A).

The AB 506 process provided a forum for CFD 1990-1 to negotiate with its two classes of creditors - the beneficial owners of the Bonds and the County. CFD 1990-1 negotiated in good

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD                                    -17-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

faith, and although not unanimous, it has obtained the agreement of creditors holding at least a majority in amount of the claims of each class CFD 1990-1 intends to impair under its Bankruptcy Plan. 11 U.S.C. § 109(c)(5)(A). Barratt-Green Decl., ¶ 21. CFD 1990-1 has satisfied section 109(c)(5)(A).

###### F. CFD 1990-1 Filed Its Petition in Good Faith

CFD 1990-1 "file[d] the petition in good faith," as required by Bankruptcy Code section 921(c). Courts and commentators have looked at a number of factors to determine whether the debtor acted in good faith. *In re New York City Off-Track Betting Corp.,* 427 B.R. 256, 278 (S.D.N.Y. 2010). These include: (i) the debtor's subjective beliefs; (ii) whether the debtor's financial problems fall within the situations contemplated by chapter 9; (iii) whether the debtor filed its chapter 9 petition for reasons consistent with the purposes of chapter 9; (iv) the extent of the debtor's prepetition negotiations, if practicable; (v) the extent that alternatives to chapter 9 were considered; and (vi) the scope and nature of the debtor's financial problems. *In re Pierce County Housing Authority* 414 B.R. 702, 714 (W.D. Wash. 2009).

For over 22 years, CFD 1990-1 explored and implemented a number of bankruptcy alternatives, all without success. As set forth in detail in the fact Section II C, CFD 1990-1 has used every tool, other than bankruptcy, to try to resolve CFD 1990-1's insolvency and to repay the Bonds. In summary, CFD 1990-1 declared the Project abandoned, thereby allowing the return of the unused Bond proceeds to satisfy the principal obligations of the Bonds that were voluntarily tendered. CFD 1990-1 conducted foreclosure sales on the defaulted Special Taxes at least twice. CFD 1990-1 entered into two work-out arrangements under which 103 finished lots within Phase 1 were sold and the proceeds used to pay interest on the Bonds through 2002. In addition, the County, although not obligated to do so, contributed to these efforts by cancelling penalties and interest that had accrued on delinquent Property Taxes at least twice. Delinquencies are so large and the value of the Property so low, that there are no other non-bankruptcy alternatives available. Polt Decl., ¶¶ 29-41.

When non-bankruptcy alternatives failed, CFD 1990-1 participated in good faith (a distinct state law requirement) in the AB 506 process. *See supra* Section (III)(B). CFD 1990-1 has not

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD

-18-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS

filed its petition as a litigation tactic, but rather as a tool to resolve its inability to pay its debts as they come due.  Chapter 9 is truly a last resort for CFD 1990-1 and its creditors.  CFD 1990-1's filing is perfectly consistent with this aim, and is in good faith.

### IV.    CONCLUSION

For these reasons, CFD 1990-1 is eligible to be a debtor under Section 109(c) of the Bankruptcy Code.

Dated:  May 13, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By:  _____  /s/ Debra A. Riley_____
DEBRA A. RILEY
Attorneys for Debtor
COMMUNITY FACILITIES DISTRICT
NO. 1990-1 (WILDWOOD ESTATES),
NEVADA COUNTY, CALIFORNIA

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

825453.02/SD

-19-

MEMORANDUM OF FACT AND LAW IN
SUPPORT OF ITS STATEMENT OF
QUALIFICATIONS